### SHREVE CHAIR CO. v. McCARTY et al.
#### (No. 10076.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 9, 1922.)

**Sales** ⚖➡81(3) **Delivery "as soon as possible" means within reasonable time.**

Acceptance of an order for furniture with promise to ship "as soon as possible" means within a reasonable time measured by the time a reasonably diligent manufacturer of the same class would take, and a contract to deliver chairs filled nearly a year after acceptance *held* not within a reasonable time (citing Words and Phrases, Second Series, "As soon as possible").

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by the Shreve Chair Company against B. W. McCarty and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Kirby, King & Overshiner, of Abilene, for appellant.

Wagstaff & Wagstaff, of Abilene, for appellees.

BUCK, J. The Shreve Chair Company, a foreign corporation, sued B. W. McCarty, J. T. McCarty, Guy McCarty, Lloyd McCarty, and George Harris, a partnership doing business at Abilene, Tex., under the firm name of McCarty Furniture Company, for debt. From a judgment for defendants in the court below, the plaintiff has appealed.

On October 9, 1919, the defendant wrote plaintiff ordering a bill of goods, and asking that the goods be shipped "at once," and giving other instructions as to shipment, etc. On October 14th the plaintiff replied as follows:

"McCarty Furniture Co., Abilene, Texas—Gentlemen: We have just received your order of the 9th, which we will book and ship out to you as soon as possible, at prices in effect at time of shipment. Yours truly,
"The Shreve Chair Co."

The goods were shipped about a year later, on, to wit, September 13, 1920, and the invoice reached defendants September 16, 1920. Upon receipt of the same, the defendants notified plaintiff that they could not accept the shipment as a fulfillment of their order of October 9, 1919, and asked for instructions as to the disposition of the shipment upon arrival at Abilene. Correspondence ensued between defendants and plaintiff, but defendants refused to accept the goods on arrival, and they were later sold by plaintiff to other parties, and plaintiff sued defendants for the loss sustained.

Defendants relied (1) upon a cancellation of the order of October 9, 1919, and (2) upon the failure of the plaintiff to ship the goods within a reasonable time after the order.

The only letter we find in the statement of facts which could reasonably be construed as a cancellation of the order is one of April 23, 1920, in reply to a letter of plaintiff advising that it had already sold all the solid oak chairs that it could get out by July 1st, but that it had some imitation quartered oak chairs, and could ship them in two or three weeks. To this letter defendants replied as follows:

"Abilene, Tex., April 23, 1920.
"The Shreve Chair Co., Union City, Pa.—Gentlemen: We thank you for your letter of the 19th in regard to chairs, but just at this time we have all the chairs we can use, in fact, have chairs to last us for several months.
"Yours very truly, McCarty Furniture Co.,
"Guy W. McCarty."

But whether this letter should be construed as a cancellation or not, we conclude the promise of plaintiff to ship the chairs "as soon as possible" was, in effect, a promise to ship them within a reasonable time. The chairs did not arrive at Abilene until October 23, 1920, more than a year after the order had been made. The only excuse offered by plaintiff for the failure to ship the goods sooner is contained in the deposition of L. D. Shreve, president and treasurer of the plaintiff corporation. He said:

"Direct interrogatory No. 5. Relative to the condition of the furniture market on October 9, 1919, we could sell at that time (October 9, 1919) a good many more chairs than we could manufacture or deliver within any reasonable length of time.
"At that time manufacturers of furniture generally throughout the United States could not take care of the business that was offered them, and many orders were refused on this account.

---
⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"On October 9, 1919, the Shreve Chair Company was behind with their orders.

"Nearly all chair manufacturers in the United States on October 9, 1919, were booking orders to be shipped at some future time at prices in effect at time of shipment, but they were usually, not promising any definite time of shipment.

"With regard to the practice at that time of the Shreve Chair Company as to receiving and booking orders for manufacture and for future shipment, all orders were received and booked to be shipped 'as soon as possible,' but no definite time specified.

"On October 9, 1919, the furniture factories, in Union City and throughout the East were nearly all behind with their orders; some of them were one year or more behind with their orders.

"On that date the Shreve Chair Company was behind with its orders. The Shreve Chair Company was behind with their orders on a good many designs more than one year.

"The Shreve Chair Company was not taking any orders at that time to be shipped out immediately.

"The Shreve Chair Company was taking all orders to be shipped 'as soon as possible.'

"At the time inquired about we were not making any contracts for the delivery of chairs immediately or for any specified date.

"We were not doing that because all the chairs we had were sold and we did not know how long it would take us to fill the orders that we then had on hand, nor how long it would take us to make any order that we might book.

"The manner of handling orders that were received and booked for shipment 'as soon as possible' was, the orders were booked and put on file, and the chairs were made as soon as we could get the material and the men to do the work.

"With regard to me having heretofore testified in another deposition that we received an order from McCarty Furniture Company dated October 9, 1919, for certain furniture, and which order I attached to said deposition as 'Exhibit A,' said order having the following notation: 'Please state how soon shipment can be made, and oblige.' To which we replied under date October 14th: 'We have just received your order of the ninth, which we will book and ship out to you as soon as possible at prices in effect at the time of shipment.'

"Relative to me stating whether or not certain exceptions as tendered in our letter of October 14th were the only exceptions that we were making at that time, we were making the same exceptions to all orders that came in.

"We shipped part of this order according to my former testimony under date February 10, 1920.

"This car shipped on February 10, 1920, did not complete the order of October 9, 1919.

"We did not ship the order of October 9, 1919, sooner than one car of it on February 10, 1920, and the other car September 13, 1920, because we had to make every chair on the order. The market was such that we had more than we could take care of. When the stock to make the chairs was bought by us, it generally was an unusual length of time in transit, and many times there were embargoes on the railroads and we could not get the material shipped that we had bought for many months. At that time the Shreve Chair Company was only making about 50 per cent. of the usual amount of chairs on account that we were not able to employ enough men and those that we did employ would not work as they formerly did. We had more orders on hand than we ever had before. Our customers were nearly all urging us to accept more orders and put them on file and ship the goods to them as soon as we could at prices in effect at time of shipment.

"Answering why we didn't ship the October 9th order sooner than we did: The greater part of the order could only be made in one small section in our factory because of the kind of chairs that they were. We would have been glad to have shipped the order sooner if we could, but we could not. We were disappointed in getting some of the stock which we had bought for some of the designs of chairs on this order. We bought it in different places, much more stock than we needed; but people in many cases could not ship the stock on account of embargoes on the railroads, or for different reasons. The stock would not come for many months after we had ordered it.

"We shipped the October 9th order of the McCarty Furniture Company as soon as possible under all the facts and circumstances surrounding us and our business and the furniture manufacturing business at that time, taking into consideration transportation questions, labor questions, volume of business, condition of the trade, etc.

"Cross-interrogatory No. 1. On October 9, 1919, we were behind with our orders on a good many designs of chairs ten months, and more than ten months. We accepted addition orders because our customers generally wanted us to.

"Cross-interrogatory No. 2. We did not notify the McCarty Furniture Company that we could not fill their October order for the fall, winter, spring, or summer season of the years 1919 and 1920, and it is not true that we received other orders like the McCarty Furniture Company's order of October 9, 1919, after we received that order, and shipped such order ahead of the McCarty Furniture Company order."

"As soon as possible" means within a reasonable time. Wm. Cameron & Co. v. Matthews, 59 Tex. Civ. App. 118, 124 S. W. 192; Berry Bros. v. Fairbanks, Morse & Co., 51 Tex. Civ. App. 558, 112 S. W. 427; 1 Words and Phrases, Second Series, 286, and authorities there cited under heading "As Soon as Possible."

We do not think a delivery a year from the date of the order is within a reasonable time, and therefore defendants were justified in refusing to accept the shipment so tendered. A reasonable time for the delivery of manufactured goods is not to be determined by the existing capacity of the seller's business, but by the time in which a reasonably diligent manufacturer of the same class as the seller would take in carrying out the contract. Hydraulic Engineering Co. v. McHaffie, 4 Q. B. D. 670, 27 Wkly. Rep. 221; 25 Cyc. p. 83.

We do not think that a seller of goods can delay one year the delivery of goods which he has promised to deliver "as soon as possible," and then seek to hold the buyer liable for a refusal to accept the long-delayed tender. As said in Rhodes v. Cleveland Rolling Mill Co. (C. C.) 17 Fed. 426, "'As soon as possible' means 'with all reasonable diligence,' or 'without unreasonable delay.'" It may be that plaintiff in this case, at the time it received the order of defendants, had already received prior orders which would keep its factory busy for longer than a reasonable time; but, if so, it should not have accepted this order and promised to deliver it to defendants within a reasonable time. Plaintiff knew at the time it received the order better than anybody else and certainly better than defendants, the limitation of its capacity, the number of prior orders on hand, the labor conditions of the country as they affected its particular business, etc., and we think it should have advised defendants at the time of the order of the probable delay in delivery, and not made a promise to deliver within a reasonable time.

The foregoing conclusions render it unnecessary to consider other assignments. The further errors alleged in the trial become immaterial in our judgment.

The judgment below is affirmed.